IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARICELA RAMIREZ,                                    Case No. 3:24-cv-01470-SB

              Plaintiff,                        **OPINION AND ORDER**

      v.

OREGON HEALTH AND SCIENCE
UNIVERSITY; KATHERINE HAVARD, PA-C;
BRENDAN J. CUNNINGHAM, DO; TARYN
LAI, MD; JENNIFER WILLINGHAM, MD;
DOES 1-100, inclusive,

              Defendants.

---

**BECKERMAN, U.S. Magistrate Judge.**

      Plaintiff Maricela Ramirez ("Ramirez"), proceeding as a self-represented litigant and in

forma pauperis ("IFP"), filed this lawsuit against Defendants Oregon Health and Science

University ("OHSU"), Brendan Cunningham, D.O. ("Dr. Cunningham"), Katherine Havard, PA-

C ("Havard"), Taryn Lai, M.D. ("Dr. Lai"), and Jennifer Willingham, M.D. ("Dr. Willingham").[1]

---

[1] In this opinion, the Court refers to the named defendants collectively as "Defendants,"
and Havard and Drs. Cunningham, Lai, and Willingham collectively as the "Individual
Defendants."

Ramirez asserts claims against Defendants under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, Title II of the Civil Rights Act ("Title II"), 42 U.S.C. § 2000a, Oregon's Public Accommodations Act ("OPAA"), OR. REV. STAT. § 659A.403, state tort law, and 42 U.S.C. § 1983 ("Section 1983"), for violation of her constitutional rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment, federal statutory rights under 42 U.S.C. § 1981 ("Section 1981"), and the Medicaid Act, 42 U.S.C. § 1396a(a)(8).

Defendants now move, pursuant to Federal Rule of Civil Procedure ("Rule") 56(a), for summary judgment on all of Ramirez's claims. The Court has federal question and civil rights jurisdiction over Ramirez's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), and supplemental jurisdiction over Ramirez's related state law claims pursuant to 28 U.S.C. § 1367(a). For the reasons explained below, the Court grants Defendants' motion for summary judgment.

## BACKGROUND

## I.    LITIGATION HISTORY[2]

This is latest in a line of cases in which Ramirez has sued her treating medical providers and their employers for racial discrimination and violation of her constitutional rights and state tort law:

---

[2] Defendants ask the Court to take judicial notice of the "adjudication" of Ramirez's "prior lawsuits" pursuant to Federal Rule of Evidence 201, noting that such "facts can be accurately and readily determined from court records," which is "a source whose accuracy cannot reasonably be questioned." (Defs.' Mot. Summ. J. ("Defs.' Mot.") at 4, ECF No. 33.) The Court agrees and grants Defendants' request for judicial notice. *See Perkins v. Procter & Gamble Co.*, No. 21-1902, 2022 WL 1125388, at *1 n.1, *3 n.6 (3d Cir. Apr. 15, 2022) (taking judicial notice of the self-represented plaintiff's "litigation history" and "recurring litigation topics"); *Brown v. Burch, Porter & Johnson, PLLC*, No. 15-6242, 2016 WL 9448027, at *3 (6th Cir. Nov.

- Compl. at 1-4 & Order at 1-3, *Ramirez v. Orfali*, No. 3:11-cv-01277-AA (D. Or. filed Oct. 24 & Nov. 18, 2011), ECF Nos. 2, 4 (dismissing Ramirez's IFP complaint against, among others, OHSU and treating OHSU medical providers for negligence, discrimination in places of public accommodations, denial of "adequate medical care because of her race or ethnicity," and "damage to her internal organs" and "nervous system," and explaining that granting leave to amend would be futile because Ramirez based her claims on events that occurred in June 2005 and November 2006 and of which she previously complained and thus the applicable two-year statute of limitations barred her claims);

- Order & Mandate at 1, *Ramirez v. Orfali*, No. 3:11-cv-01277-AA (D. Or. filed June 1, 2012), ECF Nos. 10, 10-1 (stating that the Ninth Circuit "summarily affirm[ed] the district court's judgment" because it deemed the questions that Ramirez raised on "appeal so insubstantial as not to require further argument" (citing *United States v. Hooton*, 693 F.2d 857, 858 (9th Cir. 1982) (per curiam)));

- *Ramirez v. Petrillo*, No. 3:12-cv-01472-ST, 2012 WL 12887631, at *1-3 (D. Or. Aug. 12, 2012)*, findings and recommendation adopted*, 2012 WL 12887630, at *1-3 (D. Or. Sept. 19, 2012) (screening and dismissing with prejudice Ramirez's race discrimination claim under Title II because "NW Renal Clinic" did not qualify as a "place of public accommodation," and

---

21, 2016) ("[T]he magistrate judge's judicial notice of [the self-represented plaintiff's] history of filing vexatious lawsuits . . . was a matter within the magistrate judge's discretion.").

declining to exercise supplemental jurisdiction over Ramirez's negligence claim).

- *Ramirez v. Petrillo*, 559 F. App'x 651, 651-52 (9th Cir. 2014) (holding that Ramirez failed plausibly to allege that she was discriminated against in a "place of public accommodation" under Title II, and denial of leave to amend was appropriate because the identified "deficiency could not be cured by amendment").

- *Ramirez v. Chow*, No. 12-cv-05630-RJB, 2013 WL 3724947, at *1-3 (W.D. Wash. July 12, 2013) (noting that Ramirez asserted discrimination and negligence claims and alleged that her healthcare providers "'deliberately misdiagnosed and deliberately denied adequate medical care' to [her] resulting in permanent kidney failure, failure of other internal organs, and cancer" and "discriminated against [her] . . . because of her race and disability," and granting summary judgment in the defendants' favor because Ramirez "failed to make a sufficient showing on essential elements of her claims," "failed to submit competent medical evidence regarding her physical condition or that th[e] condition was caused as a result of [the] defendants' alleged negligence and/or discrimination," and offered only "conclusory and nonspecific" allegations).

- *Ramirez v. Hart*, No. 13-cv-00873, 2014 WL 2170376, at *11 (W.D. Wash May 23, 2014) (explaining that Ramirez sued several healthcare providers and facilities for discrimination, violation of her civil rights, denial of adequate medical care, medical malpractice, and failure to "diagnose and treat her

kidney disease, other internal organ failure and gastro esophageal reflux disease," holding that Ramirez's claims were "frivolous," in part because they were "substantially the same as those [she] pled in prior cases, . . . which were dismissed," and declining to award the defendants attorney's fees but warning that in the future, Ramirez "may be subject to an award of costs and attorney's fees under the relevant statutes, and/or she may be subject to sanctions under [Rule] 11").

- *Ramirez v. Parker*, No. 3:13-cv-01772-AC, 2014 WL 7187463, at *1-18 (D. Or. Dec. 16, 2014) (stating that Ramirez's discrimination and medical malpractice claims were based on the treatment that she received from the defendant healthcare providers and facilities "between October 2009 and April 2012" and Ramirez alleged that the defendants provided "insufficient medical care," "treated [her] disparately because of her race and disability," and "intentionally covered up that [she suffered from] organ[] failure, nerve damage and cancer," and granting summary judgment in the defendants' favor); *see also Ramirez v. Parker*, No. 3:13-cv-01772-AC, 2015 WL 6163532, at *1-2 (D. Or. Oct. 20, 2015) (awarding $10,000 in attorneys' fees and $1,953.16 in costs, and explaining that Ramirez's "attorney-fee obligation [was] sufficient to deter [her] from repeating in the future her historical pattern of filing frivolous cases").

- *Ramirez v. Parker*, 698 F. App'x 358, 358 (9th Cir. 2017) (affirming the district court's denial of Ramirez's Rule 60 motion for relief from a final

judgment and motion for extension of time in which to file her notice of

appeal).

- *Ramirez v. Adventist Med. Ctr.*, No. 3:17-cv-00831-SI, 2017 WL 4798996, at

  *1-7 (D. Or. Oct. 24, 2017) (stating that Ramirez sued, among others, her

  healthcare providers and facilities "alleging medical malpractice,

  discrimination, retaliation, breach of fiduciary duty, fraud, and intentional

  infliction of emotional distress" ("IIED"), all of which arose from "two visits

  to the healthcare facility's emergency department" on May 26 and May 27,

  2013, and granting the healthcare defendants' motion to dismiss Ramirez's

  claims with prejudice).

- *Ramirez v. Adventist Med. Ctr.*, No. 3:17-cv-00831-SI, 2017 WL 6568507, at

  *1-4 (D. Or. Dec. 22, 2017) (observing that Ramirez asserted claims for

  violation of Section 1981, Title II, and the OPAA, "conspiracy and fraudulent

  concealment under 18 U.S.C. § 1512," and IIED, and alleged that she "called

  911" because "[s]he was suffering from a nosebleed due to a garlic clove

  lodged in her nose," paramedics arrived and "called a taxi cab" after advising

  that an "ambulance . . . would be expensive," and the defendants "cover[ed]

  up that [she] . . . had kidney failure and other 'internal organ diseases,'"

  granting the defendant ambulance service and paramedics' motion for

  summary judgment, and presuming that "all of [Ramirez's] exhibits ha[d]

  been properly authenticated," even though she failed to "submit[] any

  declaration attesting to the truth of [her] exhibits" or "attest[] to the veracity of

any of her contentions, as she must . . . for [a] court to consider [them] . . . as evidence").

- *Ramirez v. Adventist Med. Ctr.*, No. 3:17-cv-00831-SI, 2018 WL 770167, at *1-8 (D. Or. Feb. 7, 2018) (granting the defendant state health authority intake coordinator and nursing board investigator's motions for summary judgment on Ramirez's related claims and dismissing with prejudice the claims that Ramirez attempted to assert against the defendants that the district court dismissed).

- *Ramirez v. Adventist Med. Ctr.*, No. 3:17-cv-00831-SI, 2018 WL 1528764, at *1-4 (D. Or. Mar. 27, 2018) (granting the defendant hospital and emergency department staff's motion for summary judgment on Ramirez's claims, all of which arose "out of a visit to [the] emergency department on October 8, 2015").

- *Ramirez v. Adventist Med. Ctr.*, No. 18-35325, 2019 WL 5418320, at *1 (9th Cir. June 12, 2019) (dismissing Ramirez's appeal on the ground that it was "frivolous").

- *Ramirez v. Kornegay*, No. 3:20-cv-00152-JR, 2021 WL 2943214, at *1-9 (D. Or. May 3, 2021) (explaining that Ramirez sued state officials and various OHSU medical providers for "violation of her civil rights, breach of fiduciary duty, violation of the [EMTALA] . . . , and [IIED]," and "alleged [a] vast conspiracy to cover-up serious life-threatening medical conditions through misdiagnosis and misrepresentation of her medical record because of her race," recounting Ramirez's litigation history and filing of grievances with

OHSU regarding the April 2018 to January 2020 medical visits, treatment, tests, and exams that were at issue, and recommending that the district judge grant the state and OHSU defendants' motions for summary judgment), *findings and recommendation adopted*, 2021 WL 2941981, at *1 (D. Or. July 13, 2021).

- *Ramirez v. Kornegay*, No. 21-35645, 2023 WL 2625422, at *1-2 (9th Cir. Mar. 23, 2023) (affirming the district court's grant of summary judgment and explaining that the "district court did not err by considering Ramirez's litigation history or the medical records, which were properly submitted by the defendants during summary judgment," Ramirez "failed to offer any evidence to support any of her claims and to rebut the medical evidence produced by the hospital defendants," Ramirez's "subjective beliefs and wholly conclusory allegations [did] not satisfy the requirement that she come forward with evidence to support her claims during summary judgment," the "mere fact that the district court ruled against Ramirez does not establish bias," and considering that Ramirez "filed her original complaint on January 27, 2020," Ramirez's "federal civil rights and state common law claims for events occurring before January 27, 2018 [we]re barred by the two-year statutes of limitations" and "[a]ll of the claims alleging that the hospital defendants discriminated against [Ramirez] in public accommodations in violation of Oregon Revised Statutes [('ORS')] § 659A.403 for treatment occurring before January 27, 2019 [we]re barred by [ORS § 659A.875(4)'s] one-year statute of limitations") (simplified).

- *Ramirez v. Kornegay*, 336 Or. App. 125 (2024) (per curiam) (affirming the trial court's grant of the state and OHSU defendants' motions for summary judgment on claim preclusion grounds, and noting that like her recent federal action, Ramirez's claims "stem[med] from a series of visits to the emergency department at OHSU in April 2018 and January 2020), *rev. denied*, 373 Or. 284 (2025).

## II.    PRESENT ACTION

On September 4, 2024, Ramirez filed this IFP action against OHSU and her OHSU medical providers. (Compl. at 1-8, ECF No. 1; *see also* Second Am. Compl. ("SAC") ¶¶ 2-3, ECF No. 22; Answer & Affirmative Defs. ¶ 1, ECF No. 23, admitting that the Individual Defendants are "OHSU's employees [who] were acting within the course and scope of their employment").

On December 20, 2024, after filing an amended complaint and responding to Defendants' motion to dismiss under Rule 12(b)(6), Ramirez filed her operative second amended complaint with Defendants' consent. (ECF Nos. 9, 12, 20, 22; *see also* FED. R. CIV. P. 15(a)(1)-(2) (providing that a party may "amend its pleading once as a matter of course" within twenty-one days of amending its pleading or "service of a motion under Rule 12(b), (e), or (f), whichever is earlier," but requiring an "opposing party's written consent or the court's leave" in "all other cases").

Like her previous lawsuits, Ramirez's claims concern the treatment that she received when she visited the "OHSU Tuality Healthcare" emergency room and primary care, orthopedic, and physical therapy ("PT") clinics on September 8 and September 16, 2022, and January 8 and November 20, 2024, complaining of "worsening symptoms" of "kidney failure, liver and gallbladder disease or failure, cancer, etc." (SAC ¶¶ 10-14, 15-17, 20-21, 23-24, 32-34, 40, 45-

47, 51, 58-59, 63, 69-70, 80, 83, 91; Decl. Maricela Ramirez Supp. Pl.'s Opp'n Defs.' Mot.

Summ. J. ("Ramirez Decl.") ¶¶ 2-3, 23, 25-28, ECF No. 50) (all caps omitted). Also like her

previous lawsuits, Ramirez's theory is that Defendants "treated [her] differently" and

"intentionally discriminated" against her based on race by denying her adequate care, refusing

"appropriate medical screening" and "laboratory . . . and diagnostic tests," denying requests for

an "electric scooter," referral to specialists, and PT, making "untrue and defamatory statements in

[her] medical records," and "cover[ing] up that [she] has kidney failure, cancer, internal organ[]

disease, etc."[3] (SAC ¶¶ 10, 15, 17, 20, 32-33, 45, 47, 58-59, 63, 69, 80, 83, 91; Ramirez Decl.

¶¶ 2-5, 22-28.)

## LEGAL STANDARDS

Granting "[s]ummary judgment is appropriate if there is no genuine dispute of material

fact, and the movant is entitled to judgment as a matter of law." *Karuk Tribe of Cal. v. U.S.

Forest Serv.*, 681 F.3d 1006, 1017 (9th Cir. 2012) (en banc) (citing *Sierra Club v. Bosworth*, 510

F.3d 1016, 1022 (9th Cir. 2007)); FED. R. CIV. P. 56(a). "[T]he mere existence of *some* alleged

---

[3] Ramirez requests that the Court take judicial notice of medical records that she
submitted in her previous lawsuits covering the period from "2007 up to the present." (Pl.'s
Opp'n Defs.' Mot. Summ. J. ("Pl.'s Opp'n") at 6, ECF No. 49.) The Court declines to do so and
considers only the medical records that the parties "properly submitted . . . during summary
judgment." *Ramirez*, 2023 WL 2625422, at *1. This includes many records that Ramirez filed in
her previous lawsuits because she properly attached them as exhibits to her summary judgment
declaration. (*See* Ramirez Decl. ¶¶ 1, 6-19, attesting to Ramirez's personal knowledge and ability
to testify about her fourteen exhibits; *id.* Exs. 1-14, ECF No. 51, attaching medical records from
2009 to 2025). The Court, however, declines to address Ramirez's attempts to relitigate the
"merit[s]" of her past cases and whether courts "misapplied the rules and law," "unjustly
dismissed her complaints with prejudice," and "ignored the circumstantial and the direct and
documentary evidence that [she] submitted . . . prov[ing] that she has worsening kidney failure,
liver and gallbladders failure or diseases[,] and other undiagnosed diseases." (*See* Pl.'s Opp'n at
8-13, reflecting that after making these statements, Ramirez cites her exhibits in support of
arguments regarding her previous lawsuits, including *Chow*, *Hart*, the Oregon Court of Appeals'
recent affirmance in the second-filed *Kornegay* case, and the intradistrict cases which the Ninth
Circuit affirmed or dismissed on appeal).

factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

"A material fact is one that is needed to prove (or defend against) a claim, as determined by the applicable substantive law." *Simmons v. G. Arnett*, 47 F.4th 927, 932 (9th Cir. 2022) (citing *Nat'l Am. Ins. Co. v. Certain Underwriters at Lloyd's London*, 93 F.3d 529, 533 (9th Cir. 1996)); *see also Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) ("A fact is 'material' only if it might affect the outcome of the case[.]" (quoting *Anderson*, 477 U.S. at 248)). "An issue of material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party." *Brown v. Arizona*, 82 F.4th 863, 874 (9th Cir. 2023) (en banc) (quoting *Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1104 (9th Cir. 2020)); *see also Fresno*, 771 F.3d at 1125 ("[A] dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." (quoting *Anderson*, 477 U.S. at 248)).

In determining whether a genuine issue of material fact exists, a court must view the evidence in the light most favorable to, and draw all justifiable inferences in favor of, the nonmoving party. *See McNeil v. Sherwood Sch. Dist. 88J*, 918 F.3d 700, 706 (9th Cir. 2019) (per curiam) ("The court views 'evidence in the light most favorable to the nonmoving party,' to determine 'whether genuine issues of material fact exist.'" (quoting *George v. Edholm*, 752 F.3d 1206, 1214 (9th Cir. 2014))); *Brown*, 82 F.4th at 874 ("When determining whether a genuine issue of material fact exists, [a court] 'must draw all justifiable inferences in favor of the nonmoving party.'" (quoting *Howard v. HMK Holdings, LLC*, 988 F.3d 1185, 1189 (9th Cir.

2021))). In doing so, a court "may not judge credibility, weigh the evidence, or resolve factual disputes[.]" *Clarkson v. Alaska Airlines, Inc.*, 59 F.4th 424, 437 (9th Cir. 2023) (citing *Anderson*, 477 U.S. at 255).

## DISCUSSION

Ramirez asserts claims against Defendants under the EMTALA, 42 U.S.C. § 1395dd, Title II, 42 U.S.C. § 2000a, OPAA, OR. REV. STAT. § 659A.403, state tort law, and Section 1983, for violation of her constitutional rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment, federal statutory rights under Section 1981, and the Medicaid Act, 42 U.S.C. § 1396a(a)(8). Defendants move under Rule 56 for summary judgment on all claims. (Defs.' Mot. at 1-24.)

## I.    EMTALA

The Court turns first to Ramirez's EMTALA claim against OHSU. Ramirez alleges that OHSU violated EMTALA's medical screening and stabilization requirements when she visited the emergency department on September 8 and September 16, 2022. (*See* SAC ¶¶ 21-23, quoting 42 U.S.C. § 1395dd(a)-(b) before alleging that OHSU failed to comply with EMTALA's requirement to "reasonably screen and stabilize[] or transfer [Ramirez] to another medical facility"; Pl.'s Opp'n at 18-24, arguing that OHSU violated EMTALA in "two ways" and addressing only EMTALA's appropriate medical "screening" and "stabilization" requirements). As explained below, the Court concludes that there are no genuine issues of material fact precluding summary judgment in OHSU's favor on Ramirez's EMTALA claim, and therefore grants Defendants' motion for summary judgment on this ground. (Defs.' Mot. at 1, 16-17.)

### A.    Applicable Law

"Congress enacted EMTALA [in 1986] to ensure that individuals, regardless of their ability to pay, receive adequate emergency medical care." *Bryant v. Adventist Health Sys./W.*, 289

F.3d 1162, 1165 (9th Cir. 2002) (citing *Jackson v. E. Bay Hosp.*, 246 F.3d 1248, 1254 (9th Cir. 2001)). At the time, "Congress was concerned that hospitals were 'dumping' patients who were unable to pay, by either refusing to provide emergency medical treatment or transferring patients before their conditions were stabilized." *Id.* (quoting *Eberhardt v. City of Los Angeles*, 62 F.3d 1253, 1255 (9th Cir. 1995)). For this reason, and although it "protects all individuals, not just those who are uninsured or indigent," EMTALA is "commonly known as the 'Patient Anti-Dumping Act.'" *Id.* at 1163, 1165 (citing *Arrington v. Wong*, 237 F.3d 1066, 1069-70 (9th Cir. 2001)).

EMTALA "imposes a series" of requirements on a "hospital emergency department" that participates in the Medicare program, and authorizes aggrieved individuals' civil damages actions against "participating hospital[s]" but "does not allow private suits against physicians." *Jackson*, 246 F.3d at 1254 (obligations); *Bryant*, 289 F.3d at 1165 (Medicare program); *Eberhardt*, 62 F.3d at 1256-57 (private rights of action); 42 U.S.C. § 1395dd(d)(1)-(2) (civil money penalties and enforcement). Section 1395dd(a), (b), and (c) set forth EMTALA's medical screening, stabilization, and transfer requirements. *See Szymborski v. Spring Mountain Treatment Ctr.*, 710 F. App'x 291, 291 (9th Cir. 2018) (invoking EMTALA's "medical screening, stabilizing treatment, and discharge" requirements (citing 42 U.S.C. § 1395dd(a)-(c))); *Moyle v. United States*, 603 U.S. 324, 348-49 (2024) (Alito, J., dissenting, joined by Thomas and Gorsuch, JJ.) (addressing and quoting the relevant parts of Section 1395dd(a), (b), and (c)'s "screening, stabilization, and transfer requirements"); *see also* 42 U.S.C. § 1395dd(e)(4) ("'[T]ransfer' means the movement (including the discharge) of an individual[.]"); *Bryant*, 289 F. 3d at 1169 (referencing Section 1395dd(c) as "EMTALA's transfer provision"); *James v. Sunrise Hosp.*, 86

F.3d 885, 889 (9th Cir. 1996) (describing when Section 1395dd(c)'s "transfer restrictions"

apply).

Under Section 1395dd(a), a hospital emergency department must provide an "appropriate

medical screening" to an individual who visits the department and seeks an exam or treatment

for a medical condition:

> In the case of a hospital that has a hospital emergency department, if any
> individual (whether or not eligible for benefits under this subchapter) comes to the
> emergency department and a request is made on the individual's behalf for
> examination or treatment for a medical condition, the hospital must provide for an
> appropriate medical screening examination within the capability of the hospital's
> emergency department, including ancillary services routinely available to the
> emergency department, to determine whether or not an emergency medical
> condition (within the meaning of subsection (e)(1)) exists.

42 U.S.C. § 1395dd(a).

Under Section 1395dd(b), if the hospital emergency department determines that an

individual suffers from an "emergency medical condition," it must "stabilize" the individual's

condition or transfer the individual to an appropriate medical facility in accordance with Section

1955dd(c):

> If any individual (whether or not eligible for benefits under this subchapter)
> comes to a hospital and the hospital determines that the individual has an
> emergency medical condition, the hospital must provide either—
>
> > (A) within the staff and facilities available at the hospital, for such
> > further medical examination and such treatment as may be required
> > to stabilize the medical condition, or
> >
> > (B) for transfer of the individual to another medical facility in
> > accordance with subsection (c).

*Id.* § 1395dd(b)(1)(A)-(B); *see also James*, 86 F.3d at 888 (stating that "[i]t is hard to see why

Congress would say in subsection (b) that the transfer has to be 'in accordance with subsection

(c),' unless it meant for subsection (c) to regulate the transfers made in accord with subsection

(b)").

Finally, Section 1395dd(c) "generally restricts transfers of [individuals] with unstabilized emergency [medical] conditions unless [they] . . . make[] an informed request, a doctor signs a certificate, or if a doctor 'is not physically present in the emergency department,' a proper certificate is otherwise signed." *James*, 86 F.3d at 888 (quoting 42 U.S.C. § 1395dd(c))); *see also Bryant*, 289 F.3d at 1168 (recognizing that Section 1395dd(c) "generally prohibits the transfer of a patient with an emergency medical condition that has not been stabilized"); 42 U.S.C. § 1395dd(c) (reflecting that Section 1395dd(c) is titled "[r]estricting transfers until individual stabilized").

### B.    Analysis

The parties' dispute whether OHSU is entitled to summary judgment on Ramirez's claim that OHSU violated EMTALA's medical screening and stabilization requirements. (Defs.' Mot. at 16-17; Pl.'s Opp'n at 18-24; Defs.' Reply Supp. Mot. Summ. J. ("Defs.' Reply") at 4-6, ECF No. 53.) The Court finds that OHSU is entitled to summary judgment on Ramirez's EMTALA claim.

### 1.    Medical Records

Before turning to EMTALA's medical screening and stabilization requirements, the Court briefly describes the record evidence regarding Ramirez's relevant visits to the emergency department on September 8 and September 16, 2022.[4] (*See* Decl. Janet Schroer Supp. Defs.' Mot. Summ. J. ("Schroer Decl.") ¶¶ 3-4 & Exs. 1-2, ECF Nos. 36 and 39, attaching these medical records).

///

---

[4] Section 1395dd(d)(2)(c) "establish[es] [a] two-year statute of limitations for EMTALA claims[.]" *Pauly v. Stanford Health Care*, 797 F. App'x 347, 348 (9th Cir. 2020) (citing 42 U.S.C. § 1395dd(d)(2)(C)). As discussed above, Ramirez filed this lawsuit on September 4, 2024.

### a.     September 8, 2022

When Ramirez presented to the emergency department with "multiple areas of pain" on September 8, 2022, Havard, a certified physician's assistant, served as the attending provider. (*Id.* Ex. 1 at 3.) Havard noted that Ramirez reported that her pain was "most prominent in her left knee" and attributable to an incident two days earlier in which she tripped on the sidewalk and "fell forward, land[ing] on all fours." (*Id.*) Havard added that Ramirez denied hitting her head, losing consciousness, or suffering from any post-fall confusion or disorientation and reported "[n]o headaches, visual disturbances, neck pain, weakness, paresthesia, changes in bowel/bladder control, chest pain, shortness of breath/trouble breathing, broken skin/bleeding, abdominal pain, [or] nausea/vomiting." (*Id.*) Havard also cited Ramirez's report that after her trip-and-fall accident, she experienced an "[i]mmediate onset of pain 'all over [her] body,'" she was able to "roll onto her backside [and] into a seated position[] on her own, [and she] then received assistance standing and ambulating back to her home." (*Id.*) Further, Havard cited Ramirez's report that she had been using ice and a cane from home, she was "[n]ot sleeping well," her pain was "worse with direct palpation," movement, and weightbearing, and ambulation, and she was "eating/drinking without difficulty" and "getting around" but it was painful to do so." (*Id.*)

Havard performed a clinical interview and complete review of systems ("ROS"), and found that Ramirez's ROS was "negative" in the above history of present illness ("HPI"). (*Id.*) Havard stated that Ramirez's psychiatric exam revealed that her mood, behavior, and judgment were normal, she was "[p]leasant and cooperative," her "[c]ognition [was] appropriate," and she could "follow commands and answer questions appropriately" and "make independent medical decisions." (*Id.*)

///

Havard also stated that Ramirez's physical exam revealed she was "not in acute distress," her blood pressure was "106/68," her pulse was "[n]ormal" given initial and follow-up rates of 105 and 92 beats per minute, she exhibited "[m]inimal" swelling and tenderness in her left knee and decreased range of motion (i.e., complete extension but not flexion in her knee), and her gait was "abnormal" (i.e., she had a "[m]ild limp," favored her right side, guarded her left side, and used a "cane for assistance," but her gait was "steady" and she "tolerat[ed] more than [five] steps" and "ambulat[ed] around [the emergency] department"). (*Id.* at 4-5.) Consequently, Havard determined that outside of the decreased range of motion and minimal swelling and tenderness in Ramirez's left knee, her musculoskeletal exam was "benign and reassuring." (*Id.* at 5.)

Given the physical exam findings and absence of "joint laxity" or indications for a "more acute etiology" or "need for a more acute intervention" or "additional work-up," Havard stated that she and Ramirez "mutual[ly]" decided to order x-rays of the "left knee only." (*Id.* at 6-7.) Havard also wrapped Ramirez's left knee with an ACE bandage and offered Ramirez "pain management while in the [emergency department], as well as . . . to take home," which Ramirez declined in favor of "an ice pack." (*Id.* at 6-7.) Havard advised Ramirez that her x-rays appeared to reveal "arthritic/degenerative changes" and were otherwise within normal limits, with no signs of fractures or dislocations. (*Id.* at 6.) Havard added that she would notify Ramirez if the radiologist's final read identified "any discrepancies," the "[e]xact etiology" of Ramirez's symptoms was "unclear," and considering Ramirez's "clinical presentation," her differential diagnoses included, but were not limited to, a musculoskeletal "strain/sprain, acute flare of chronic arthritic/degenerative changes, soft tissue inflammation, [or] ligamentous injury[.]" (*Id.* at 6-7, 13.)

Before discharging Ramirez, Havard observed that Ramirez's pain was "controlled," Ramirez reported that her knee was "better supported with [the ACE] bandage in place," and Ramirez exhibited "[g]ood improvement throughout [her emergency department] visit" that evening. (*Id.* at 7.) Havard placed a referral to and encouraged close follow up with a primary care physician and advised Ramirez to seek medical attention if her symptoms worsened or persisted, consider over the counter and "supportive care options," and use her assistive device when ambulating. (*Id.* at 7, 13; *see also id.* at 8, reflecting that a nurse also described Ramirez's discharge condition and stated that Ramirez was ambulating, alert and oriented "x4," exhibiting a "steady gait" and "stable" vital signs, reported that her pain was "tolerable," and appeared in "no acute distress"; *id.* at 15-16, confirming that Ramirez's final x-ray revealed only a "[s]mall knee joint effusion").

### b.    September 16, 2022

On September 16, 2022, Ramirez returned to the emergency department with chief complaints of knee and back/"kidney" pain. (*Id.* Ex. 2 at 1.) Dr. Cunningham, who served as the attending physician, observed that Ramirez's past medical history was significant for carpal tunnel syndrome and osteoarthritis and that Ramirez complained primarily of "moderate" and "sharp" left knee pain after "a fall about [ten] days ago" and "several years" of "bilateral 'kidney pain,'" recently visited the emergency department for the same knee issue and her x-ray was "negative," exhibited an ability to ambulate, and "denie[d] any dysuria or hematuria." (*Id.* at 2-3.)

Similar to Havard, Dr. Cunningham performed a complete ROS, which was "negative" with the exception of the above-described HPI. (*Id.* at 4.) Dr. Cunningham noted that Ramirez's blood pressure was "136/64" and pulse rate was ninety beats per minute. (*Id.*) Dr. Cunningham's physical and psychiatric exams were also normal and revealed only tenderness but no swelling,

effusion, or impaired range of motion in Ramirez's left knee. (*Id.* at 4-5.) He emphasized that Ramirez could ambulate and "just had a[n] x-ray that was negative," and that although his record review revealed "chronic reports of kidney pain," Ramirez's "lab work" has "always" reflected that her "renal function" was "normal" and Ramirez did not have a history of ureterolithiasis (kidney stone disease). (*Id.* at 5.) Given these facts and findings, Dr. Cunningham's impression was chronic left knee pain and that discharge was appropriate. (*Id.* at 5-6.) He encouraged Ramirez to use Tylenol and follow up and establish a relationship with a primary care physician. (*Id.* at 3-5.)

### 2.    EMTALA's Requirements

Ramirez fails to raise a genuine dispute of material fact as to, among other things, whether Havard or Dr. Cunningham violated EMTALA's appropriate medical screening requirement on September 8 and September 16, 2022, or she had an "emergency medical condition."

Recognizing that Congress did not enact EMTALA to "establish a federal medical malpractice cause of action nor to establish a national standard of care," the Ninth Circuit has held that a "hospital does not violate EMTALA if it fails to detect or if it misdiagnoses an emergency condition." *Bryant*, 289 F.3d at 1166 (simplified). Consistent with this understanding, the Ninth Circuit has adopted a "comparative test" and held that "a hospital satisfies EMTALA's 'appropriate medical screening' requirement if it provides a patient with an examination comparable to the one offered to other patients presenting similar symptoms[.]" *Jackson*, 246 F.3d at 1256.

At the same time, however, the Ninth Circuit has also "held that a hospital may be found liable under EMTALA's screening provision if the screening examination 'is so cursory that it is not designed to identify acute and severe symptoms that alert the physician of the need for

immediate medical attention to prevent serious bodily injury.'" *Bryant*, 289 F.3d at 1166 n.3 (quoting *Jackson*, 246 F.3d at 1256). Ultimately, the "touchstone" of a court's inquiry is whether the "procedure [was] designed to identify an 'emergency medical condition,' that [was] manifested by 'acute' and 'severe' symptoms." *Jackson*, 246 F.3d at 1255 (quoting *Eberhardt*, 62 F.3d at 1258).

Ramirez does not raise a genuine dispute of material fact as to whether Havard and Dr. Cunningham failed to satisfy EMTALA's "appropriate medical screening" requirement. When Ramirez visited the emergency room on September 8 and September 16, 2022, Havard and Dr. Cunningham reviewed Ramirez's medical history and records, performed a complete ROS, assessed Ramirez's vital signs, and conducted physical and psychiatric exams. (Schroer Decl. Exs. 1-2.) Havard also offered Ramirez pain management, ordered x-rays that proved unremarkable, and stabilized Ramirez's knee with an ACE bandage. Eight days later, Dr. Cunningham relied on this objective evidence and compared Ramirez's chronic complaints of kidney pain to her lab work, which "always" demonstrated that Ramirez's renal function was normal.

Ramirez fails to produce any evidence suggesting that Havard or Dr. Cunningham's exam was (1) "so cursory that [it was] not designed to identify acute and severe symptoms that alert the [providers] of the need for immediate medical attention to prevent serious bodily injury," *Bryant*, 289 F.3d at 1166 n.3 (quoting *Jackson*, 246 F.3d at 1256), or (2) not "comparable to the ones offered to other patients presenting similar symptoms." *Jackson*, 246 F.3d at 1256. Ramirez seeks to avoid summary judgment by relying on her own assertions that Havard and/or Dr. Cunningham performed "cursory" exams that were "not 'unremarkable,'" behaved in a "hostile and intimidating" manner toward her, relied on "untrue" and "incorrect" statements and

diagnoses, and failed to "perform a routine pain assessment," follow up on an "abnormal blood pressure check," or "offer any treatment [for] tachycardia, abnormal blood pressure, diffuse pain, kidney pain, [and] osteoarthritis pain, which was an emergency medical condition." (Pl.'s Opp'n at 13-15, 18-24.)

Significantly, Ramirez does not argue that Havard and Dr. Cunningham failed to conduct any exams or check her vital signs. Nor does Ramirez dispute that Havard stabilized her knee with an ACE bandage and offered her pain management and medication, including but not limited to Tylenol, that Dr. Cunningham reviewed her history of lab work, which stemmed from chronic complaints of kidney pain, and that Havard and Dr. Cunningham relied on unremarkable x-rays that Havard obtained of her left knee, which she reported was the primary source of her pain and impaired mobility. In fact, Ramirez addresses only Havard's decision not to order "whole body" x-rays, her justification for declining Tylenol, and disputed aspects of Havard's and Dr. Cunningham's reports but not the result of her x-rays or that she informed providers that her left knee was the primary source of her pain and impaired mobility. (*Compare id.* at 13-15, 18-24, *and* Ramirez Decl. ¶ 25, *with* Schroer Decl. Ex. 1 at 1, 4-9, 13-16 & Ex. 2 at 1-13, 17.)

Also noteworthy is Ramirez's assertion that she suffers from "chronic kidney failure," "worsening symptoms of kidney failure," and "kidney pain," and reliance on treatment records that Geoff Xiao ("Xiao"), a nephrology physician assistant, prepared on November 17, 2020. (*See* Pl.'s Opp'n at 14-15, 17, citing Ramirez Decl. ¶ 7 & Ex. 2; SAC ¶¶ 10, 14-15, 17, 21, 23-24, 27, 32-33, 40-41, 51, 77, 84, 88, 93.) In his treatment records, Xiao noted that Ramirez engaged in "sporadic medical care with poor follow up" and that most of Ramirez's "symptoms can be attributed" to malnourishment, which Ramirez in turned attributed to suffering from "renal failure" and related symptoms over the previous ten years. (*See* Ramirez Decl. Ex. 2 at 1,

PAGE 21 – OPINION AND ORDER

adding that Ramirez self-referred to the nephrology "office for [a] workup of chronic kidney disease" and presented as "very focused on renal failure" and "concerned about having renal failure"). Xiao stated that (1) he examined and reviewed with Ramirez more than a decade of lab work, (2) he identified "[n]o significant risk of [chronic kidney disease] except possibly chronic borderline hypotension," (3) Ramirez's recent urinalysis revealed three or more red blood cells but was "otherwise unremarkable," (4) Ramirez "[r]epeatedly insisted that she ha[d] renal failure and requested to start dialysis and get renal transplantation," and he "[a]dvised [her that] there [was] no indication for dialysis currently and she would not qualify for transplantation," and (5) although Ramirez's "labs have always been normal," as Dr. Cunningham later observed, Ramirez "insisted all the labs were wrong despite [the results] being [from] over a span of [ten] years." (*Id.* at 4.)

        In Ramirez's most recently filed federal case, the district court granted summary judgment in OHSU's favor on her EMTALA claim because the "unrebutted medical evidence" established that Ramirez's "exams and labs were normal indicating no serious medical issues requiring immediate treatment," and because there was "insufficient evidence in the record to demonstrate [that she] had an emergency medical condition[.]" *Ramirez*, 2021 WL 2943214, at *7. The Ninth Circuit affirmed on appeal and explained that "[s]ummary judgment was proper for all of the defendants because Ramirez failed to offer any evidence to support any of her claims and to rebut the medical evidence produced by the hospital defendants," and that Ramirez's "own subjective beliefs and wholly conclusory allegations [did] not satisfy the requirement that she come forward with evidence to support her claims during summary judgment." *Ramirez*, 2023 WL 2625422, at *1 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

So too here. Ramirez opposes summary judgment by relying on her subjective beliefs, wholly conclusory allegations, and evidence that undermines key aspects of her case. Ramirez offers no evidence demonstrating that Havard or Dr. Cunningham failed to comply with EMTALA's medical screening requirement, treated Ramirez differently than others presenting with similar post-trip-and-fall pain and impaired mobility and chronic reports of kidney pain, or conducted exams that were "so lacking as to support a conclusion that . . . [they] were not 'designed to identify acute and severe symptoms.'" *Cf. Jackson*, 246 F.3d at 1256 ("The district court properly concluded that [the defendant hospital emergency department] complied with EMTALA's screening requirements. [The decedent's] survivors' own expert witnesses testified that they had no reasons to believe that [the decedent] was treated differently than other patients presenting similar symptoms to the [hospital] emergency department. Nor did the survivors present evidence to support the conclusion that the screening examinations were so lacking as to support a conclusion that the examinations were not 'designed to identify acute and severe symptoms.'").

At bottom, it is clear that Ramirez's exams and objective test results were benign, reassuring, and unremarkable. Ramirez disagrees and attempts to create a genuine issue of material fact by asserting that Havard, Dr. Cunningham, and other providers recorded defamatory and "untrue and/or incorrect statements," an "untrue and/or incorrect diagnosis," and "untrue and/or incorrect tests results" in her medical records. (*See* Pl.'s Opp'n at 13-17, 25, focusing on Havard and Dr. Cunningham's physical exams, assessment of vital signs, and description of records that they reviewed, but failing specifically to address x-rays of Ramirez's left knee or Xiao's and Dr. Cunningham's analogous observations about chronic reports of kidney pain and labs; Ramirez Decl. ¶¶ 1, 5, 23, declaring under penalty of perjury that

Defendants "stigmatized" Ramirez and made "untrue and incorrect statements" in their motion and OHSU's medical providers "intentionally stigmatized" Ramirez "by intentionally writing [an] incorrect diagnosis and untrue statements in [Ramirez's] medical records and by intentionally fabricating evidence against [Ramirez] and disseminat[ing] the[ir] stigmatizing statements online").

It is well established that "to survive summary judgment, a party needs to offer facts beyond conclusory pleadings and self-serving testimony[.]" *McDonald v. Molina Healthcare of Wa.,, Inc.*, No. 22-35108, 2023 WL 2387586, at *1 (9th Cir. Mar. 7, 2023) (citing *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003)). A "conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact[.]" *Brown v. Dolce*, No. 22-16937, 2023 WL 8676202, at *1 (9th Cir. Dec. 15, 2023) (quoting *Nilsson v. City of Mesa*, 503 F.3d 947, 952 n.2 (9th Cir. 2007)). Further, "an assertion that is 'blatantly contradicted by the record, so that no reasonable jury could believe it[,]' will not create a genuine issue of material fact at summary judgment[.]" *Lull v. County of Sacramento*, No. 21-16734, 2022 WL 10310626, at *1 (9th Cir. Oct. 18, 2022) (quoting *Scott*, 550 U.S. at 380).

Ramirez's conclusory and self-serving arguments and declaration, which lack any supporting evidence, are insufficient to create a genuine issue of material fact. *Cf. McDonald*, 2023 WL 2387586, at *1 (noting that the plaintiff took "issue with how his conduct was characterized," but he did "not deny making [certain] remarks or engaging in [certain] conduct" and failed to "proffer any factual basis for his claims . . . beyond his own conclusory testimony and pleadings"). Thus, Ramirez fails to raise a genuine issue of material fact as to whether she had an "emergency medical condition" when she visited the emergency room on September 8

PAGE 24 – OPINION AND ORDER

and September 16, 2022, or whether Havard and Dr. Cunningham complied with EMTALA's medical screening requirement. *See* 42 U.S.C. § 1395dd(e)(3) ("The term 'emergency medical condition' means . . . a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in—(i) placing the health of the individual . . . in serious jeopardy, (ii) serious impairment to bodily functions, or (iii) serious dysfunction of any bodily organ or part."); *Jackson*, 246 F.3d at 1254-55 ("[A] hospital's duty to stabilize the patient does not arise until the hospital first detects an emergency medical condition." (quoting *Eberhardt*, 62 F.3d at 1259)).

For these reasons, the Court grants Defendants' motion for summary judgment on Ramirez's claim against OHSU for violation of EMTALA's medical screening and stabilization requirements.

## II.    SECTION 1983 CLAIMS

Defendants move for summary judgment on Ramirez's Section 1983 claims against the Individual Defendants for violation of her substantive due process and equal protection rights under the Fourteenth Amendment, Section 1981, and the Medicaid Act.[5] (Defs.' Mot. at 17-19; Defs.' Reply at 6-10.)

///

---

[5] Ramirez's respective Section 1983 claims are set forth under her second, third, fourth, and seventh causes of action. (SAC ¶¶ 32-57, 69-79.) The formatting of Ramirez's opposition, and the analysis and arguments that Ramirez presents therein, reflects that she agrees with this description of her claims and construal of her operative second amended complaint and that she styles her fifth, sixth, eighth, and ninth causes of action as claims for public accommodation discrimination in violation of Title II and the OPAA, defamation "and/or" a "stigma plus" claim and IIED. (Pl.'s Opp'n at 24-35, 38-39; *see also* SAC ¶¶ 58-68, 80-95, setting forth Ramirez's remaining claims).

A.     **Applicable Law**

To prevail on a claim under Section 1983, a plaintiff must plead and prove "two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law." *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)); *see also Cortez v. County of Los Angeles*, 294 F.3d 1186, 1188 (9th Cir. 2002) ("One of the requisite elements for stating a claim under [Section] 1983 is that the violation was committed by a 'person' acting under color of state law." (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989))). "The 'under color of law' requirement . . . is the same as the Fourteenth Amendment's 'state action' requirement." *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1149 (9th Cir. 2011) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 928 (1982)).

B.     **Analysis**

The Court concludes that there are no genuine issues of material fact precluding summary judgment in the Individual Defendants' favor on Ramirez's Section 1983 claims. The Court therefore grants Defendants' motion for summary judgment on this ground. *See generally Joseph v. City of San Jose*, No. 23-15358, 2024 WL 4144077, at *3 (9th Cir. Sept. 11, 2024) (recognizing that "[a] non-movant's bald assertions or a mere scintilla of evidence are both insufficient to withstand summary judgment" (quoting *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009))).

Defendants do not dispute one of Ramirez's Section 1983 claims' requisite elements—namely, the "under color of law" requirement. (*See* Defs.' Mot. at 17, stating as much and acknowledging that at all times relevant to this litigation, the Individual Defendants were "public employees acting within the scope of their employment"). Given this concession, the Court's

resolution of Defendants' motion turns on whether the Individual Defendants violated "a right secured by the Constitution or laws of the United States." *Long*, 442 F.3d at 1185 (citing *West*, 487 U.S. at 48).

### 1.    Constitutional Rights

Ramirez's claims against the Individual Defendants for violation of her substantive due process and equal protection rights are based almost exclusively on the same underlying conduct: (1) Havard and Dr. Cunningham's medical screening and care and differing treatment of and "intentional[] discriminat[ion]" against Ramirez because of race, (2) Drs. Lai and Willingham's medical care and "cover[] up" of Ramirez's "kidney failure, cancer, internal organ diseases, etc.," refusal to order Ramirez an "electric scooter" or refer Ramirez to an oncologist, and entry of "untrue and defamatory statements" in Ramirez's medical records, and (3) the Individual Defendants' failure to develop a "treatment plan" for Ramirez, address "numerous potential complications," comply with "policies, practices, and procedures restricting [Ramirez's] medical release," and recognize Ramirez's need for "hospitalization and transfer to another medical facility or skilled nursing facility." (SAC ¶¶ 32-33, 37, 40-41, 45-46.) Ramirez also bases her constitutional claims on a nurse and unnamed staff member's refusal to take her blood pressure or schedule her a PT appointment when she visited the orthopedic and PT clinics on November 20, 2024. (*Id.* ¶¶ 16, 34, 45, reflecting that Ramirez cites these events under her substantive due process claim and then "repeats and realleges" them by reference under her equal protection claim).

Ramirez's constitutional claims are based on conduct that she attributes primarily to racial discrimination. This is evident from Ramirez's pleading. (*See id.* ¶¶ 32, 45-46, basing both constitutional claims on the Individual Defendants' treatment of Ramirez on September 8 and September 16, 2022 and January 8, 2024, citing racial discrimination as the basis for Havard and

PAGE 27 – OPINION AND ORDER

Dr. Cunningham's alleged substantive due process violation, "repeat[ing] and realleg[ing]" the previous and subsequently complained-of conduct under Ramirez's equal protection claim, attributing Drs. Lai and Willingham's actions to racial discrimination, and claiming that all of the complained-of conduct was the "result of intentional discrimination" because of race; *id.* ¶¶ 47-68, basing violations of Section 1981, Title II, and the OPAA on same conduct and underlying events).

Ramirez's overarching claims of racial discrimination impacts the Courts' analysis of her constitutional claims. As explained below, Ramirez may not proceed on a substantive due process theory.

"Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Kirkpatrick v. County of Washoe*, 843 F.3d 784, 788 n.2 (9th Cir. 2015) (en banc) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998)); *see also Graham v. Connor*, 490 U.S. 386, 395 (1989) (noting the same in the Fourth Amendment context); *Patel v. Penman*, 103 F.3d 868, 874 (9th Cir.1996) (Fifth Amendment), *overruled in part on other grounds as recognized in Nitco Holding Corp. v. Boujikian*, 491 F.3d 1086, 1089 (9th Cir. 2007). Accordingly, where "the Equal Protection Clause covers the actions challenged in the complaint, [a plaintiff] may not proceed on a substantive due process theory." *Williamson v. Hawaii*, No. 21-cv-00098-JMS, 2022 WL 2359246, at *5 (D. Haw. June 30, 2022) (quoting *Johnson v. California*, 207 F.3d 650, 656 (9th Cir. 2000) (per curiam)), *aff'd*, No. 22-16618, 2023 WL 5348814, at *1 (9th Cir. Aug. 21, 2023).

///

In *Williamson*, for example, the self-represented plaintiff sued various state entities and officials, asserting race-based claims related to the defendants' investigations into him and on his behalf. 2022 WL 2359246, at *1. At summary judgment, the district court held that the defendants were "entitled to judgment as a matter of law on [the] [p]laintiff's substantive due process claim." *Id.* at *5. In so holding, the district court explained that "because racial discrimination [was] the essence of [the] [p]laintiff's case, and because the Fourteenth Amendment['s Equal Protection Clause] provides[d] an explicit textual source of protection against racial discrimination," the plaintiff's substantive due process claim "fail[ed]" and the plaintiff was "not [entitled] to proceed on [such] a . . . theory." *Id.* (simplified) (quoting *Johnson*, 207 F.3d at 656).

On appeal, the Ninth Circuit affirmed, explaining that the district court "properly granted summary judgment" on the plaintiff's substantive and procedural "due process and equal protection claims because [he] failed to raise a genuine dispute of material fact as to whether he was deprived of a constitutionally protected liberty or property interest, or whether defendants acted with an intent or purpose to discriminate based upon race." 2023 WL 5348814, at *1. In support, the Ninth Circuit observed that to prevail on an equal protection claim, a plaintiff must demonstrate that "defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class," and that "where the Equal Protection Clause covers the actions challenged in the complaint, a plaintiff may not proceed on a substantive due process theory[.]" *Id.* (first quoting *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013); then quoting *Johnson*, 207 F.3d at 656; and then citing *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)); *see also Portman*, 995 F.2d at 904 (noting that the elements of a

procedural due process claim include a deprivation of a constitutionally protected "liberty or property interest").

Like the district court in *Williamson*, this Court concludes that "racial discrimination" is the "essence" of Ramirez's case and substantive due process claim, which is based on the same challenged conduct as her equal protection claim. (*See* SAC ¶¶ 32, 45-68); *cf. Williamson*, 2022 WL 2359246, at *5 (holding that the plaintiff's substantive due process claim failed in part "because racial discrimination [was] the essence of [the] plaintiff's case"). Given this fact, and because the Fourteenth Amendment's Equal Protection Clause "provides an explicit textual source of protection against racial discrimination" and "cover[s] the actions challenged in the complaint," Ramirez "may not proceed on a substantive due process theory" against the Individual Defendants. *See Williamson*, 2022 WL 2359246, at *5 (making similar observations (first citing *Albright v. Oliver*, 510 U.S. 266, 273 (1994); and then quoting *Johnson*, 207 F.3d at 656)).

For these reasons, the Court grants Defendants' motion for summary judgment on Ramirez's claim for violation of her substantive due process rights under the Fourteenth Amendment. *See id.* (concluding that the defendants were "entitled to judgment as a matter of law").

Defendants are also entitled to summary judgment on Ramirez's equal protection claim. To prevail on an equal protection claim, a "plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Jensen v. Brown*, 131 F.4th 677, 700 (9th Cir. 2025) (quoting *Furnace*, 705 F.3d at 1030). Ramirez fails to point to any evidence in the summary judgment record from which the Court

may draw a reasonable inference that the Individual Defendants discriminated against her based on race.

The record evidence described above, and Ramirez's consultation with Drs. Lai and Willingham on January 8, 2024, support this conclusion. (*See* Schroer Decl. Ex. 3 at 1-13; Decl. Jennifer Willingham Supp. Defs.' Mot. Summ. J. ("Willingham Decl.") ¶¶ 1-7, ECF No. 34 & Decl. Taryn Lai Supp. Defs.' Mot. Summ. J. ("Lai Decl.") ¶¶ 1-3, ECF No. 35, addressing and attaching the medical records from Ramirez's medical visit on January 8, 2024). Dr. Lai is a licensed postgraduate medical doctor who is completing her OHSU family residency program and provides services at the Tuality Healthcare primary care clinic. (Lai Decl. ¶¶ 1, 3-4.) Dr. Willingham is a licensed medical doctor and assistant professor of family medicine at the OHSU School of Medicine who supervises residents at the primary care clinic. (Willingham Decl. ¶¶ 1, 3-4.)

When Ramirez appeared for a new patient visit with Dr. Lai on January 8, 2024, Dr. Lai obtained Ramirez's vitals, physically examined Ramirez, and discussed and evaluated "several . . . concerns" that Ramirez reported, Dr. Willingham served as the "attending physician" and performed part of the physical exam, and Drs. Lai and Willingham both reviewed Ramirez's medical history and discussed and agreed on Ramirez's diagnoses, "approaches to management," and follow-up plans. (Lai Decl. ¶¶ 5-7; Willingham Decl. ¶¶ 5-7; *see also* Schroer Decl. Ex. 3 at 1-13.) Drs. Lai and Willingham also observed and agreed that Ramirez (1) requested a "referral to oncology" and "report[ed] several chronic concerns for multiple organ failure and malignancy without supporting diagnoses or workup," (2) asked to place an order for an electric scooter because the orthopedic clinic would "not write one," (3) needed to consult with a primary care physician, and (4) carried a "primary" diagnosis of somatic symptom

disorder.[6] (Schroer Decl. Ex. 3 at 1-3; *cf.* Willingham Decl. ¶ 7, stating that Ramirez's chart note reflects Dr. Lai's "observations, interpretations, and medical opinion based upon [her] medical knowledge and experience, [her] examination and assessment of . . . Ramirez, and [her] discussion with Dr. Willingham"; Willingham Decl. ¶ 7, demonstrating that Dr. Willingham makes the statement and declares that she "also reviewed and agreed with" Dr. Lai's treatment records).

Further, Drs. Lai and Willingham agreed that Ramirez carried this "primary" diagnosis because although Ramirez reported "multiple serious conditions" that "various providers" diagnosed "over the years," they reviewed Ramirez's medical history and discovered that Ramirez had a "significant history of similar perseveration over unsubstantiated diagnoses, refusal to obtain complete testing as ordered, requests for invasive treatments without indication[,] and delusional beliefs surrounding her diagnoses and lab results."[7] (Schroer Decl. Ex. 3 at 1, 3.) Drs. Lai and Willingham added that they obtained updated, "baseline labs," Ramirez declined "breast, colon and cervical cancer screens" and "all medications" because her "urologist once told her that her 'kidney and liver failure' prohibit her from taking medicine of any kind," there was "[n]o indications for [an] electric scooter or oncology referral per [that day's] assessment," and they planned to discuss Ramirez's case with the "clinic psychiatrist" for "further management." (*Id.*; *see also id.* at 4, citing conflicts between Ramirez's reported

---

[6] A "somatic-symptom disorder [is] a mental condition constituting an unhealthy obsession with one's physical symptom." *Smith v. Kijakazi*, No. 21-35430, 2022 WL 2662883, at *1 (9th Cir. July 11, 2022).

[7] Ramirez disagrees with Drs. Lai and Willingham on whether she "suffer[s] [from] somatization." (Ramirez Decl. ¶ 28.)

diagnosis of a "malignant neoplasm" and "kidney and liver failure" and providers' notes, which Drs. Lai and Willingham reviewed).

Ramirez fails to point to or present any evidence from which the Court may draw the reasonable inference that the Individual Defendants acted with an intent or purpose to discriminate against her because of race. *Cf. Joseph*, 2024 WL 4144077, at *3 (holding that "[s]ummary judgment was proper" on the self-represented plaintiff's equal protection claim because he did "not point to any evidence in the record from which [the court] may draw a reasonable inference" that the defendant committed such a violation). Ramirez relies only on conclusory allegations about, among other things, a patient receiving an ambulance transport to OHSU "because she was white" and a time-barred January 2020 incident, in which emergency room staff and providers admitted a "white patient" to the hospital even though her unidentified condition was "not as serious" as Ramirez's condition. (*See* Pl.'s Opp'n at 31; Ramirez Decl. ¶¶ 22-23); *cf. Ramirez*, 2023 WL 2625422, at *1 ("Ramirez filed her original complaint on January 27, 2020. Therefore, any federal civil rights and state common law claims for events occurring before January 27, 2018 are barred by the two-year statutes of limitations." (first citing *Cooper v. City of Ashland*, 871 F.2d 104, 105 (9th Cir. 1989) (per curiam); and then citing OR. REV. STAT. § 12.110(1))).

For these reasons, the Court grants Defendants' motion for summary judgment on Ramirez's equal protection claim against the Individual Defendants. *See Williamson*, 2023 WL 5348814, at *1 (holding that summary judgment was proper because the self-represented plaintiff "failed to raise a genuine dispute of material fact as to . . . whether [the] defendants acted with an intent or purpose to discriminate based upon race" (citing *Furnace*, 705 F.3d at 1030)); *Brown*, 2023 WL 8676202, at *1 (affirming the grant of summary judgment because the self-represented

plaintiff "failed to raise a genuine dispute of material fact as to whether [the] defendant . . . acted with discriminatory intent when issuing [a] disciplinary ticket," and noting that the plaintiff was required to "show that defendants acted with an intent to discriminate" (citing *Furnace*, 705 F.3d at 1030)).

### 2.    Federal Statutory Rights

#### a.    Section 1981

Defendants move for summary judgment on Ramirez's claim against the Individual Defendants under Section 1983 for violation of Ramirez's statutory rights under Section 1981. (Defs.' Mot. at 1, 19-20; *see also* SAC at 15-19, reflecting that Ramirez names the Individual Defendants and invokes Section 1983 and her rights to make and enforce contracts under Section 1981).

Section 1981 "protects all people 'within the jurisdiction of the United States' and ensures their equal right to 'make and enforce contracts' without respect to race." *Shepherd v. City of Seattle*, No. 23-35195, 2024 WL 4100247, at *2 (9th Cir. Sept. 6, 2024) (quoting *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006)). "A plaintiff seeking to enforce rights secured by [Section] 1981 against a state actor must bring a cause of action under [Section] 1983." *Yoshikawa v. Seguirant*, 74 F.4th 1042, 1047 (9th Cir. 2023) (en banc); *see also Bala v. Henrikson*, No. 23-35034, 2024 WL 546349, at *2 (9th Cir. Feb. 12, 2024) (noting that the plaintiff was an OHSU physician who asserted a claim under Section 1981 against OHSU and its employees for "interfer[ing] with her right to make and enforce contracts because of her race," holding that the plaintiff could not "bring a standalone" Section 1981 claim, and remanding with instructions to allow the plaintiff to "clarify her specific allegations" and "replead" her claim (citing *Yoshikawa*, 74 F.4th at 1044, 1047)).

///

Ramirez fails to raise a genuine issue of material fact as to whether the Individual

Defendants interfered with her right to make or enforce contracts because of her race. (*See* SAC

¶ 5 & Pl.'s Opp'n at 31, asserting interference with Ramirez's rights under her "Regence Blue

Cross Medicare Advantage Health Insurance Plan and Medicaid"). A judge from this district

previously entered summary judgment in other defendants' favor on a similar claim that Ramirez

asserted against them, and the reasons and deficiencies that the district judge identified for doing

so apply equally here:

> [Ramirez] asserts claims under . . . [Section] 1981, [Title II,] 42 U.S.C.
> § 2000a, and [the OPAA, OR. REV. STAT.] § 659A.403. Each of these claims
> stems from [Ramirez's] assertion that [the defendant hospital] and its employees
> discriminated against [her] on the basis of race. [Ramirez] also argues that [the
> defendant] mistreated her in retaliation for a previous discrimination claim she
> filed against other organizations or medical providers. [Ramirez] states, but
> provides no evidence that, one of the doctors against whom she previously made a
> complaint was a "colleague" of [the defendant].
>
> [Ramirez's] claims of discrimination have no factual support in the record.
> [Ramirez] presents no evidence to suggest that she was mistreated. Although there
> is some factual dispute about [Ramirez's] blood pressure at the time of her visit to
> the hospital, and [Ramirez] alleges that she suffers from various conditions which
> required further treatment than she received, [Ramirez] has provided no medical
> evidence in her opposition to [the defendant's] motion for summary judgment that
> supports this claim. Furthermore, there is no evidence that [Ramirez] was treated
> differently from other patients, refused service, or otherwise discriminated against
> because of, or on the basis of, her race or ethnicity. Although some of [Ramirez's]
> medical records reflect the fact that she identifies as Hispanic or Latina, there is
> no indication that [Ramirez's] treatment was affected by this fact. [Ramirez's]
> claims under . . . [Section] 1981, [Title II,] 42 U.S.C. § 2000a, and [the OPAA,
> OR. REV. STAT.] § 659A.403 are therefore dismissed.

*Ramirez*, 2018 WL 1528764, at *2, *aff'd*, 2019 WL 5418320, at *1 (dismissing the appeal as

frivolous).

This passage aptly summarizes why the Individual Defendants are similarly entitled to

summary judgment on Ramirez's claim that they interfered with her right to make and enforce

contracts because of her race. For the same reasons, the Court grants Defendants' motion for

summary judgment on Ramirez's Section 1981 claim. *See Winns v. Exela Enter. Sols., Inc.*, No. 22-16342, 2023 WL 4992825, at *2 (9th Cir. Aug. 4, 2023) (explaining that a "plaintiff bringing a [Section] 1981 claim 'bears the burden of showing that race was a but-for cause of its injury,'" and that the district court "correctly granted summary judgment" on the self-represented plaintiff's "claim of discrimination" under Section 1981 because "[t]here was no genuine issue of material fact as to whether [the plaintiff's] race was a 'but-for' cause" of the challenged action (quoting *Comcast Corp. v. Nat'l Ass'n Afr. Am.-Owned Media*, 589 U.S. 327, 333 (2020))).

### b.    Medicaid Act

Ramirez also asserts a claim against the Individual Defendants under Section 1983 for violation of the Medicaid Act—specifically, 42 U.S.C. § 1396a(a)(8), "otherwise known as the Medicaid Act's 'reasonable promptness provision.'"[8] *Ball v. Rodgers*, 492 F.3d 1094, 1108 (9th Cir. 2007).

"The Medicaid program was established in 1965 via Title XIX of the Social Security Act, now codified at 42 U.S.C. [§]§ 1396 [to 1396w-8], and is 'a cooperative federal-state program through which the federal government provides financial assistance to states so that they can furnish medical care to low-income individuals.'" *Ariz. All. for Cmty. Health Ctrs. v. Ariz. Health Care Cost Containment Sys.*, 47 F.4th 992, 999 (9th Cir. 2022) (quoting *Cal. Ass'n of Rural Health Clinics v. Douglas*, 738 F.3d 1007, 1010 (9th Cir. 2013)). Essentially, "Medicaid offers States 'a bargain.'" *Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357, 362 (2025) (quoting *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 323 (2015)). In exchange "for federal

---

[8] Under this provision, "[a] State plan for medical assistance must . . . provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individual[.]" 42 U.S.C. § 1396a(a)(8).

funds, States agree 'to spend them in accordance with congressionally imposed conditions[,' and if they] fail to comply substantially with those conditions, the Secretary of Health and Human Services can withhold some or all of [their] federal Medicaid funding." *Id.* (quoting *Armstrong*, 575 U.S. at 323).

Ramirez's second amended complaint and the parties' motion papers address the question of whether Section 1396a(a)(8) confers an individual right that Ramirez can enforce through Section 1983. (*See* SAC ¶¶ 73-74 & Pl.'s Opp'n at 34-35, reflecting that Ramirez's allegations and opposition address whether Congress intended to "create a private remedy" and for "Medicaid beneficiaries to receive reasonably prompt medical assistance"; Defs.' Reply at 9-10, responding that Ramirez relies unduly on non-precedential authorities that "do not support her claim" and argument that she can sue "individual [medical] providers who treat Medicaid recipients" for violation of Section 1396a(a)(8)). The Supreme Court's recent decision in *Medina* addressed a similar question. *See* 606 U.S. at 363 ("This case poses the question whether, in addition to [withholding funds], individual Medicaid beneficiaries may sue state officials for failing to comply with one funding condition spelled out in 42 U.S.C. § 1396a(a)(23)(A)."); *see also Lancaster ex rel. Green v. Cartmell*, 162 F.4th 1063, 1064 (10th Cir. 2025) (recounting that *Medina* concerned Section 1395a(a)(23)(A), "a provision materially similar to [Section] 1396a(a)(8)").[9]

///

---

[9] Under this provision, "[a] State plan for medical assistance must . . . provide that . . . any individual eligible for medical assistance (including drugs) may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required (including an organization which provides such services, or arranges for their availability, on a prepayment basis), who undertakes to provide him such services[.]" 42 U.S.C. § 1396a(a)(23)(A).

Significantly, the "Supreme Court in *Medina* explained that a statute confers a personally enforceable right only if the law 'clearly and unambiguously uses rights-creating terms' with an 'unmistakable focus on individuals like the plaintiff.'" *Lancaster*, 162 F.4th at 1064 (quoting *Medina*, 606 U.S. at 368). The Supreme Court in *Medina* held that Section 1396a(a)(23)(A)—a provision materially similar to [Section] 1396a(a)(8)—did not satisfy that standard and rejected [the] plaintiffs' private right of action." *Id.* The Supreme Court explained that "lower court judges . . . should not" consult three of its past decisions "when asking whether a spending-power statute creates an enforceable individual right," and that the "statutes at issue" in *Health & Hospital Corporation of Marion County v. Talevski*, 599 U.S. 166, 181-83 (2023), "supply the only reliable yardstick against which to measure whether spending-power legislation confers a privately enforceable right." *Medina*, 606 U.S. at 376-80 (first citing *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 509 (1990); then citing *Wright v. Roanoke Redevelopment & Hous. Auth.*, 479 U.S. 418, 423-24, 431-32 (1987); and then citing *Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997)).

Emphasizing that the Federal Nursing Home Reform Act ("FNHRA") provisions at issue in *Talevski* referred to a nursing home resident's "right" and "rights," the Supreme Court turned to Section 1396a(a)(23)(A) and found that it "look[ed] nothing like those FNHRA provisions" because it lacked "anything like FNHRA's clear and unambiguous 'rights-creating language.'" *Id.* at 377-78 (first quoting 42 U.S.C. § 1396r(c)(1)(A)(ii), (2)(a); and then quoting *Talevski*, 599 U.S. at 186). The Supreme Court also emphasized the consequence of a holding to the contrary. It would "likely" mean that "[m]any other Medicaid plan requirements" would similarly "create an individually enforceable right" and "rights-creating provisions might more nearly become the rule," even though Congress "knows how" but did not use "clear and unambiguous rights-creating language" in Section 1396a(a)(23)(A) to notify and "help[] alert grantees that accepting

federal funds comes with a duty to answer private suits," and even though the Supreme Court's cases have held that "Section 1983 permits private plaintiffs to sue for violations of federal spending-power statutes only in 'atypical' situations." *Id.* at 380, 385 (quoting *Talevski*, 599 U.S. at 183).

Six months after the Supreme Court issued *Medina*, the Tenth Circuit addressed the question like the one that the parties address here. Specifically, the Tenth Circuit addressed whether "*Medina* require[d] [it] to conclude that [Section] 1396a(a)(8) does not clearly and unambiguously confer a private right of action enforceable under [Section] 1983." *Lancaster*, 162 F.4th at 1065. After describing *Medina* in detail and how the Supreme Court concluded by "reemphasiz[ing] that rights-creating provisions in spending-power statutes are 'atypical' exceptions and not the rule," the Tenth Circuit turned to and "rejected" the plaintiff's "claim that . . . [Section] 1396a(a)(8) confer[red] a private right enforceable via [Section] 1983." *Id.* at 1065-68 (simplified). The Tenth Circuit found that "*Medina* squarely control[led]" and that "much of *Medina*'s analysis regarding [Section] 1396a(a)(23)(A) applie[d] to [Section] 1396a(a)(8)," and therefore held that "[f]or the same reasons" *Medina* found that Section "1396a(a)(23)(A) [did] not confer a private enforceable right, neither [did Section] 1396a(a)(8)." *Id.* at 1068-69.

Several pre-*Medina* decisions either support or explicitly hold that Section 1396a(a)(8) confers a private right of action under Section 1983. The Tenth Circuit found that *Medina* implicitly overruled a sister circuit's decision. *See id.* at 1065, 1069 & n.5 (noting that the plaintiff cited and relied heavily on a Third Circuit decision holding that Section "1396a(a)(8) [did] in fact confer an individual right enforceable through [Section] 1983," disagreeing that the Third Circuit's "analysis stands" post-*Medina*, and noting that the Third Circuit leaned

"heavily . . . on the three Supreme Court cases disclaimed in *Medina*," i.e., *Wright*, *Wilder*, and

*Blessing* (simplified) (citing *Sabree v. Richman*, 367 F.3d 180, 184-87 (3d Cir. 2004))).

In a pre-*Medina* case examining whether Section "1396n(c)(2)(C) and (d)(2)(C)," also

known as the Medicaid Act's "free choice provisions," created "individual rights enforceable via

[Section] 1983," the Ninth Circuit "consider[ed]" the Third Circuit's *Sabree* decision and

evaluation of Section 1396a(a)(8) and noted *Sabree* "influenced" its "analysis" in a past decision.

*Ball*, 492 F.3d at 1106 (simplified). The Ninth Circuit also cited favorably to a First Circuit case

holding that "there is a [Section] 1983 cause of action arising from [Section] 1396a(a)(8), in part,

because 'the statute, on its face, does intend to benefit plaintiffs'" given its use of the term

'eligible individuals.'" *Id.* (simplified) (quoting *Bryson v. Shumway*, 308 F.3d 79, 88-89 (1st Cir.

2002))).

Furthermore, in holding that Sections "1396n(c)(2)(C) and (d)(2)(C) provide[d] a right of

action under which Medicaid beneficiaries can protect their individual rights," the Ninth Circuit

found that "like the language of [Section] 1396a(a)(8), . . . the language of [Sections]

1396n(c)(2)(C) and (d)(2)(C) satisfies the 'rights-creating' standard set forth in [Supreme Court

precedent]." *Id.* at 1109, 1117; *see also id.* at 1118-19 (adding that the district court on remand

did not need to "revisit" the "Medicaid beneficiaries' claims under [Section] 1396a(a)(8), the

Medicaid Act's 'reasonable promptness' provision," and explaining that Arizona did not "defend

against these claims at the bench trial, given its victory at the summary-judgment stage," the

"Medicaid beneficiaries never appealed that decision," and the Ninth Circuit was unable to

"affirm the judgment as entered on the ground that there was a 'reasonable promptness' or gap in

service violation").

///

It is evident that *Ball* lends support to Ramirez's claim that Section 1396a(a)(8) confers a private right of action enforceable under Section 1983. *Ball*, however, predates *Medina*, relied on the three cases that the Supreme Court disclaimed in *Medina* (i.e., *Wright*, *Wilder*, and *Blessing*), and the Third Circuit's analysis in *Sabree*, *see id.* at 1103-12, 1115-17, which the Tenth Circuit recently (and persuasively) found "cannot withstand scrutiny" given the Supreme Court's "directives in *Medina*," which "repeatedly emphasized that provisions may benefit or even protect individual interests without conferring an enforceable right." *Lancaster*, 162 F.4th at 1069-70.

The Court agrees with *Lancaster* and finds that *Medina* controls here. *Medina* compels the conclusion that like Section 1396a(a)(23)(A) and unlike the FNHRA provisions at issue in *Talveski*, which "supply the only reliable yardstick against which to measure whether spending-power legislation confers a privately enforceable right," *Medina*, 606 U.S. at 377, Section 1396a(a)(8) does not "clearly and unambiguously use rights-creating terms." *Id.* at 377-78 (emphasizing the FNHRA provisions' use of the words "right" and "rights" and how Section 1396a(a)(23)(A) lacks "anything like FNHRA's clear and unambiguous 'rights-creating language'"); *cf.* 42 U.S.C. § 1396a(a)(8) ("A State plan for medical assistance must . . . provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individual[.]"); 42 U.S.C. § 1396a(a)(23)(A) ("A State plan for medical assistance must . . . provide that . . . any individual eligible for medical assistance (including drugs) may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required (including an organization which provides such services,

or arranges for their availability, on a prepayment basis), who undertakes to provide him such

services[.]").

     For these reasons, the Court finds that Defendants are entitled to summary judgment on

Ramirez's claim for violation of the Medicaid Act because Section 1396a(a)(8) does not confer

an individual right enforceable under Section 1983.[10] *See Medina*, 606 U.S. at 376-80, 385;

*Lancaster*, 162 F.4th at 1065-70; *see also Sallaj v. Howard*, No. 25-cv-01119, 2026 WL 214346,

at *1, *5 n.8, *14 (D. Kan. Jan. 27, 2026) (evaluating a motion to dismiss, citing *Medina* and

*Lancaster* in dismissing sua sponte and with prejudice the self-represented plaintiff's Section

1983 claim against a state department's secretary for violation of Section 1396a(a)(8), because

the statute fails to reflect that it confers an individual right enforceable under Section 1983, and

adding that "Congress rarely 'confers individual rights' through its spending power")

(simplified).[11]

///

---

[10] Alternatively, the Court concludes that even assuming Section 1396a(a)(8) conferred such a right, Defendants are entitled to summary judgment on Ramirez's claim because she fails to raise a genuine issue of material fact as to whether any Defendant failed to "furnish[] with reasonable promptness," or denied her the opportunity to "make application for," "medical assistance."

[11] Ramirez's second amended complaint includes conclusory allegations regarding Defendants' failure to follow various "policies, practices, and procedures" and "official practice" of violating her "civil and constitutional rights" and "intentional[ly] discriminati[ng] against [her] on the basis of [race.]" (SAC ¶¶ 10, 40, 51.) Ramirez cannot establish liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), because Ramirez's claims for violation of her constitutional and federal statutory rights fail and "'[a] government entity may not be held liable under . . . [Section] 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation' of [Ramirez's] protected rights." *Shepherd*, 2024 WL 4100247, at *2 (stating that because the plaintiff's "disparate treatment claims" under Section 1981 failed, he could not "establish *Monell* liability" (citing *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011))); *Joseph*, 2024 WL 4144077, at *3 ("Summary judgment was proper on [the plaintiff's] claim . . . under *Monell* . . . because there was no violation of [his] constitutional rights." (citing *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006))).

### 3.    "Stigma-Plus" Claim

Ramirez styles her eighth cause of action as a state law claim for defamation against

Drs. Lai and Willingham "and/or" a "stigma plus" claim. (SAC at 25; *id.* ¶¶ 80-84, 87; Pl.'s

Opp'n at 35.)

In *Chaudry v. Aragón*, 68 F.4th 1161, 1171 (9th Cir. 2023), the Ninth Circuit provided a

"summation" of the elements necessary to prevail on a "stigma-plus" due process claim under

Section 1983:

> In short, to lodge a cause of action under [Section] 1983, [the] [p]laintiffs
> must establish that [the] [d]efendants, (1) acting under color of State law,
> (2) caused (3) [the] [p]laintiffs, as U.S. citizens or persons within the jurisdiction
> of the United States, (4) a deprivation of rights, privileges, or immunities secured
> by the Constitution and laws. And further, to prove a deprivation of rights under
> [Section] 1983 pursuant to a "stigma-plus" due process claim, [the] [p]laintiffs
> must establish: (1) the public disclosure of a stigmatizing statement by a state
> actor; (2) the accuracy of which is contested; (3) plus the denial of some more
> tangible interest. Failure to establish any of these enumerated elements will defeat
> [the] [p]laintiffs' "stigma-plus" due process claim under [Section] 1983.

*Id.* (simplified); *see also Pounds v. Smith*, No. 20-35154, 2021 WL 3667229, at *3 (9th Cir. Aug.

18, 2021) (affirming the district court's dismissal of a self-represented plaintiff's "due process

claim under the Fourteenth Amendment" because he failed "adequately [to] plead allegations

sufficient to satisfy the 'stigma plus' test" (quoting *Ulrich v. City & Cnty. of S.F.*, 308 F.3d 968,

982 (9th Cir. 2002))).

To the extent Ramirez is attempting to pursue a stigma-plus claim, the Court concludes

that Defendants are entitled to summary judgment for several reasons. First, Ramirez has failed

to raise a genuine issue of material fact as to whether Defendants violated any constitutional or

federal statutory right discussed herein. *See Chaudry*, 68 F.4th at 1171 (identifying all of the

elements that a "stigma-plus" plaintiff must establish to prevail on such a claim); *see also*

*Baddour v. Hart*, 743 F. App'x 868, 869 (9th 2018) (holding that the district court "properly

granted summary judgment" on the self-represented plaintiff's "'stigma-plus' claims, because [the plaintiff] failed to raise a triable dispute as to whether defendants violated any of her constitutional rights," and noting that "a 'stigma-plus' claim requires defamation plus the deprivation of a constitutional right" (quoting *Miller v. California*, 355 F.3d 1172, 1177 (9th Cir. 2004))).

Second, Ramirez "fails to raise a genuine dispute of material fact as to whether she was deprived of a constitutionally protected liberty or property interest[.]" *Williamson*, 2023 WL 5348814, at *1 (citing *Portman*, 995 F.2d at 904 (procedural due process)). Third, Ramirez fails to raise a genuine issue of material fact as to whether a state actor publicly disclosed a stigmatizing statement about her. *See Chaudy*, 68 F.4th at 1171 (elements); *Pounds*, 2021 WL 3667229, at *3 (same). Relying exclusively on Drs. Lai and Willingham's written statements in their chart notes and Ramirez's "medical records," Ramirez presents arguments but no evidence establishing that unidentified "third parties" and "health care providers" across three states "accessed [her] electronic medical records online and read the [allegedly] defamatory and untrue statements," which caused "other health care providers," "patients," "persons in the OHSU [emergency department] wait area," and Ramirez's "neighbors" to "disrespect[] and harass[]" her. (*Compare* Pl.'s Opp'n at 35-36, making arguments, *and* SAC ¶¶ 80-90, presenting allegations and theories, *with* Ramirez Decl. ¶ 23, referring only and generally to online dissemination of Drs. Lai and Willingham's statements in their own chart notes and Ramrez's "medical records").

In summary, to the extent that Ramirez is attempting to pursue a stigma-plus claim against Drs. Lai and Willingham, Defendants are entitled to summary judgment on Ramirez's claim.

III.    **TITLE II AND OPAA**

Defendants argue that they are entitled to summary judgment on Ramirez's claims of racial discrimination under Title II, 42 U.S.C. § 2000a(a), and the OPAA, ORS § 659A.403. (Defs.' Mot. at 1, 20-21.) The Court agrees. For the reasons discussed in Part II.B.2.a., there are no genuine issues of material fact precluding summary judgment in Defendants' favor on Ramirez's claims under Title II and the OPAA. *See Ramirez*, 2018 WL 1528764, at *2 (providing the same reasons for granting summary judgment in the defendants' favor on Ramirez's claims under Section 1981, Title II, and OPAA), *aff'd*, 2019 WL 5418320, at *1 (dismissing the appeal as frivolous).

IV.    **DEFAMATION**

As discussed in Part II.B.3., Ramirez asserts a defamation claim against Drs. Lai and Willingham based on statements in their chart notes and Ramirez's medical records. (SAC ¶¶ 80-90.) The Court finds that Defendants are entitled to summary judgment on Ramirez's defamation claim.

A.    **Applicable Law**

The Oregon Supreme Court has "recognized a common-law action for defamation for injury to reputation for over 150 years." *Neumann v. Liles*, 369 P.3d 1117, 1121 (Or. 2016) (citation omitted). Under Oregon law, defamation comprises both libel (injurious written or printed words) and slander (injurious spoken words). *See id.* (discussing actionable forms of defamation and explaining that "[l]ibel[] . . . [is] defamation by written or printed words" and "[s]lander . . . is defamation by spoken words" (citing *Hinkle v. Alexander*, 417 P.2d 586, 589 (Or. 1966))).

"To establish a claim for defamation, a plaintiff must show that a defendant made a defamatory statement about the plaintiff and published the statement to a third party." *Neumann*,

369 P.3d at 1121 (citing *Wallulis v. Dymowski*, 918 P.2d 755, 757-58 (Or. 1996)). The Oregon

Supreme Court has explained that "[a] defamatory statement is one that would subject the

plaintiff 'to hatred, contempt or ridicule[,] tend to diminish the esteem, respect, goodwill or

confidence in which [the plaintiff] is held[,] or . . . excite adverse, derogatory or unpleasant

feelings or opinions against [the plaintiff].'" *Id.* (simplified) (quoting *Farnsworth v. Hyde*, 512

P.2d 1003, 1004 (Or. 1973)); *Lowell v. Wright*, 512 P.3d 403, 411 (Or. 2022) (describing a

defamatory statement in a similar way and stating that such a statement "can be the basis for a

defamation claim").

 "To be actionable, a [statement] must be both false and defamatory." *Reesman v. Highfill*,

965 P.2d 1030, 1034-35 (Or. 1998) (citing *Harley-Davidson v. Markley*, 568 P.2d 1359, 1361-62

(Or. 1977)); *see also Kolwitz v. Lincoln Cnty. ex rel. Lincoln Cnty. Sheriff's Off.*, 520 F. App'x

570, 570-71 (9th Cir. 2013) (holding that the self-represented plaintiffs "failed to raise a triable

dispute as to [the] required elements" of their defamation claim, and noting that "for a statement

to be actionable under Oregon law, the statement at issue must be both defamatory and false"

(citing *Reesman*, 965 P.2d at 1034)). "In general, a statement is published when it is

communicated to a third party." *Wallulis*, 918 P.2d at 758 (citing *State ex rel. Advanced Dictating*

*v. Dale*, 524 P.2d 1404, 1406 (1974)). Thus, "if a person makes a defamatory statement about

another person, but that statement is not conveyed to a third party, no publication has occurred."

*Id.*

 **B.    Analysis**

 There are no triable issues of fact precluding summary judgment in Defendants' favor on

Ramirez's defamation claim. The Court therefore grants Defendants' motion for summary

judgment on this ground.

///

Oregon courts have recognized that "[a] statement that is otherwise defamatory is privileged if it is uttered under such circumstances that the law grants immunity to the speaker." *Mannex Corp. v. Bruns*, 279 P.3d 278, 285 (Or. Ct. App. 2012) (citing *Wattenburg v. United Med. Lab'ys, Inc.*, 525 P.2d 113, 114 (Or. 1974)). "There are two forms of privilege that may apply in a defamation action; a defamatory statement may be either 'absolutely privileged' or 'qualifiedly [or conditionally] privileged.'" *Wallulis*, 918 P.2d at 760; *see also id.* at n.5 (noting that courts use the terms "conditional privilege" and "qualified privilege" and the terms have the "same meaning").

An "absolute privilege . . . bars [a] defamation claim altogether." *DeLong v. Yu Enters., Inc.*, 47 P.3d 8, 10 (Or. 2002) (citing *Moore v. West Lawn Mem'l Park*, 512 P.2d 1344, 1346 (Or. 1973)). "By contrast, a qualified privilege does not bar the action, but [it does] require[] the plaintiff to prove that the defendant abused the privileged occasion, in order to recover from the defendant." *Wallulis*, 918 P.2d at 760-61 (simplified) (quoting *Bank of Or. v. Indep. News*, 693 P.2d 35, 38 (1985)). "Generally, a qualified privilege exists to protect three kinds of statements: (1) those made to protect the defendant's interests; (2) those made to protect the plaintiff's employer's interests; or (3) those made on a subject of mutual concern to the defendant and the persons to whom the statement was made." *DeLong*, 47 P.3d at 10 (citing *Wallulis*, 918 P.2d at 762).

The district court's decision in *Franson v. United States*, No. 3:19-cv-01983-AC, 2021 WL 2232054, at *6-7 (D. Or. May 10, 2021), *findings and recommendation adopted*, 2021 WL 2229045, at *1 (D. Or. June 2, 2021), is instructive. The plaintiff in that defamation action alleged that physicians justified their revocation of his opiate agreement and prescription by making false statements and entering factually erroneous into his medical records. 2021 WL

2232054, at *6-7. The district found that the physicians' allegedly defamatory statements were

privileged and dismissed the plaintiff's defamation claim with prejudice and without leave to

amend:

> . . . [The plaintiff's] allegations . . . make clear [that] the alleged
> defamatory statements on which [he] relies are medical opinion or conclusions
> based on admitted facts which are not actionable or are likely privileged.
>
> . . . [The plaintiff] seeks the right to exercise [a] "line-item veto" . . . to
> remove or redact "all libel, erroneous notes, mistaken assumptions, and wrong
> conclusions" and "biased, one-sided, and contaminated medical opinions with
> regard to opiates" . . . in his medical records . . . . These allegations make clear
> [that] the alleged defamatory statements [upon which the plaintiff relies] are
> various physicians' opinions on the propriety of prescribing opiates to [him,]
> despite his admitted continuing cannabis use. A defamation claim must be
> premised on a statement that is actually false. "Even if a statement is capable of a
> defamatory meaning, there can be no viable action for defamation if the statement
> is substantially true." *Rycraft, Inc. v. Ribble Corp.*, No. 97-cv-01573-KI, 1999 WL
> 375610, at *7 (D. Or. Apr. 26, 1999) (citing *Bahr v. Ettinger*, 745 P.2d 807, 808
> (Or. Ct. App. 1998)). Thus, to the extent [the] [d]efendants expressed their
> opinions about the propriety of prescribing opioids to a cannabis user, provided
> information to support these opinions, and apply these opinions to [the plaintiff],
> [the] [d]efendants' statements are not actionable as defamatory.
>
> Moreover, the alleged defamatory statements appear to be privileged. [The
> plaintiff] repetitively alleges [that the] [d]efendants made the defamatory
> statements to "justify the revocation of the previously existing opioid agreement"
> and "justify the removal of opioids being prescribed." . . . A defamatory statement
> is subject to a qualified privilege if: "(1) it was made to protect the defendant's
> interests; (2) it was made to protect the interests of the plaintiff's employer; or
> (3) it was on a subject of mutual concern to the defendant and the persons to
> whom the statement was made." *Mannex Corp.*, 279 P.3d at 285 (citing *Wallulis*,
> 918 P.2d at 762). Based on the allegations, [the] [d]efendants included the alleged
> defamatory statements in [the plaintiff's] medical records to protect their interests
> by explaining and providing support for their decision to discontinue [the
> plaintiff's] opioid prescription. Additionally, in his opposition brief, [the plaintiff]
> explains the alleged defamatory statements "cause irreparable harm to [his]
> character in the eyes of any potential future physician." . . . The medical history of
> a mutual patient is a "subject of mutual concern" to previous and prospective
> physicians. Accordingly, the statements found in [the plaintiff's] medical records
> are undoubtedly privileged.

*Id.* at *8 (simplified); *see also Franson v. United States*, No. 3:19-cv-01983-AR, 2023 WL

4239335, at *3 (D. Or. May 9, 2023) (noting that shortly after the district judge issued his June

2021 order adopting the findings and recommendation, he issued a follow-up order stating, among other things, that the plaintiff may not amend the defamation claim that he "previously dismissed"), *findings and recommendation adopted*, 2023 WL 4235464, at *1 (D. Or. June 28, 2023).

Like the district court in *Franson*, this Court concludes Drs. Lai and Willingham's statements in their chart notes and Ramirez's medical records are privileged and therefore not actionable. Drs. Lai and Willingham's challenged statements amount to nothing more than common and routinely recorded information in a patient-physician setting. The statements are Drs. Lai and Willingham's medical opinions and findings, diagnoses, exam and test results, record review, assessment plans, scheduled follow-up, in-person observations, interpretation and understanding of patient reports and complaints, and consultation with other medical providers. (*See* Schroer Decl. Ex. 3 at 1-13; Lai Decl. ¶¶ 1-7; Willingham Decl. ¶¶ 1-7.) Such statements undoubtedly protect Drs. Lai and Willingham's interest and the "medical history of a mutual patient is a 'subject of mutual concern' to previous and prospective physicians." *Franson*, 2021 WL 2232054, at *8.

Ramirez argues and alleges that Drs. Lai and Willingham "intentionally and maliciously wr[ote] [an] incorrect diagnosis and untrue and incorrect statements" in her medical records and "presumed" that their statements, which were based on "fabricat[ed] evidence against [Ramirez]," would be "harmful to [Ramirez's] reputation." (SAC ¶¶ 83-84; Pl.'s Opp'n at 35-37; Ramirez Decl. ¶ 23.) By way of example, Ramirez cites Drs. Lai and Willingham's statements that (1) Ramirez reported that "various medical providers" diagnosed her with several "serious conditions" over the years, but Drs. Lai and Willingham's record review "reveal[ed] a significant history of similar perseveration over unsubstantiated diagnoses," (2) Drs. Lai and Willingham

planned to discuss Ramirez's care with the clinic psychiatrist, (3) a physical exam revealed that

Ramirez was "[u]nderweight" and "appear[ed] older than [her] stated age," and (4) a psychiatric

exam revealed "[t]angential speech" and "perseveration on multiple unsubstantiated medical

conditions." (SAC ¶ 83; Schroer Decl. Ex. 3 at 3, 5.) Ramirez also cites similar statements that a

physician's assistant at the Tuality Healthcare orthopedic clinic made in a treatment note dated

November 20, 2024, and the physician's assistant's reference to a somatic symptom disorder,

which Drs. Lai and Willingham previously diagnosed. (Pl.'s Opp'n at 36, quoting Schroer Decl.

Ex. 4 at 7.)

Nothing in the record suggests that Drs. Lai and Ramirez (or any medical provider, for

that matter) fabricated any evidence against Ramirez. Further, nothing in the record suggests that

Drs. Lai and Willingham lack an objective basis or good faith belief for making the challenged

statements, which appear intended to protect their own (and Ramirez's) interests and concern

matters of mutual concern to previous and prospective physicians that may be involved in

Ramirez's care.

In summary, Drs. Lai and Willingham's challenged statements are privileged, and to the

extent they are not, the statements are not actionable because the only reasonable inference that

the Court may draw on this record is that they are substantially, if not entirely, true. As a result,

the Court grants Defendants' motion for summary judgment on Ramirez's defamation claim.[12]

///

///

---

[12] Ramirez argues that Defendants' counsel has made defamatory statements about her during this proceeding. (Pl.'s Opp'n at 36-37; Ramirez Decl. ¶ 4.) Relatedly, the Oregon Supreme Court has held that "statements made by parties to judicial proceedings are absolutely privileged[.]" *Wallulis*, 918 P.2d at 761 (quoting *Binder v. Oregon Bank*, 585 P.2d 655, 655 (Or. 1978)).

## V.     IIED

The remaining dispute concerns whether Defendants are entitled to summary judgment on Ramirez's IIED claim against the Individual Defendants. (Defs.' Mot. at 22-23; Pl.'s Opp'n at 37-38; Defs.' Reply at 13; *cf.* SAC ¶¶ 91-95.) The Court resolves this dispute in Defendants' favor.

To prevail on an IIED claim under Oregon law, "a plaintiff must establish: (1) the defendant intended to inflict severe emotional distress, (2) the acts were the cause of plaintiff's severe emotional distress, and (3) the acts were sufficiently grievous to constitute a transgression of the bounds of socially tolerable conduct." *Dawson v. Entek Int'l*, 630 F.3d 928, 941 (9th Cir. 2011) (citing *Delaney v. Clifton*, 41 P.3d 1099, 1106 (Or. App. 2002)). A plaintiff is not required to prove "a malicious motive or a purposeful design to inflict emotional distress on [him; rather, the first element] is satisfied if a defendant either desires to inflict severe emotional distress, or knows that such distress is certain, or substantially certain, to result from his conduct." *Id.* (quoting *Delaney*, 41 P.3d at 1108). "Whether the conduct alleged is sufficiently extreme or outrageous to be actionable is a fact-specific inquiry . . . made on a case-by-case basis considering the totality of the circumstances[,' and] . . . [w]hether conduct constitutes an extraordinary transgression of the bounds of socially tolerable conduct is a question of law." *Id.* (first quoting *Delaney*, 41 P.3d at 1106; and then quoting *Harris v. Pameco Corp.*, 12 P.3d 524, 529 (Or. Ct. App. 2000)).

Ramirez presents no evidence demonstrating that the Individuals Defendants intended to inflict severe emotional distress or that they desired or knew that such distress was certain or substantially certain to result from their medical encounters with and treatment of Ramirez. Additionally, even when viewing the record evidence in the light most favorable to Ramirez and drawing all reasonable inferences in Ramirez's favor, as the Court must at this stage, it does not

support the conclusion that the Individual Defendnats' "actions 'were sufficiently grievous to constitute a transgression of the bounds of socially tolerable conduct.'" *Wani v. George Fox Univ.*, 856 F. App'x 672, 676 (9th Cir. 2021) (holding that for these same reasons, the district court "properly dismissed" the plaintiff's IIED claim against several defendants and "properly granted judgment on the pleadings" in the remaining defendants' favor (quoting *Dawson*, 630 F.3d at 941)).

Accordingly, the Court grants Defendants' motion for summary judgment to Ramirez's IIED claim.[13]

## CONCLUSION

For the reasons stated, the Court GRANTS Defendants' motion for summary judgment (ECF No. 33).

**IT IS SO ORDERED.**

DATED this 9th day of February, 2026.

HON. STACIE F. BECKERMAN
United States Magistrate Judge

---

[13] It is clear that Ramirez lacks the ability to pursue a viable claim against the Doe defendants named in her complaint. Thus, summary judgment is also proper on Ramirez's claims against the Doe defendants and Ramirez is not entitled to an opportunity through discovery to identify them. *See Reed v. Cox*, 821 F. App'x 836, 937 (9th Cir. 2020) (noting that the "[p]laintiff should be given an opportunity through discovery to identify the unknown defendants, unless the complaint would be dismissed on other grounds" (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980))). Given its findings and rulings above, the Court also concludes that it is unnecessary to address punitive damages, clearly established law, Defendants' objection to Ramirez's "Notice of Errata," Ramirez's references to and reliance on the named "OHSU Tuality Healthcare," any distinction between OHSU and Tuality Healthcare, and related issues pertaining to Ramirez's tort claim notice. (*See* Defs.' Mot. at 2, 16-19, 23; Defs.' Reply at 1-2, 10; Pl.'s Opp'n at 1-3, 17.) Simply put, Ramirez's claims suffer from fatal factual and legal defects that obviate such a need.